## Elkhorn-Hazard Coal Company v. Fairchild, et al.

(Decided January 25, 1924.)

## Appeal from Letcher Circuit Court.

1. Arbitration and Award—Party Instituting Arbitration Under Contract and Accepting Award Cannot Claim Provision Therefor Against Public Policy.—A party who instituted arbitration proceedings under a contract and accepted and performed the unanimous award of the arbitrators cannot complain that the chancellor let the award stand, on ground that provision in contract for arbitration was against public policy and void.

2. Mines and Minerals—Government Control and Strikes and Car Shortage Held Not to Excuse Payment of Minimum Royalties.— Under mining lease lessee was held not excused from payment of minimum royalties because of a car shortage for about one-half of the year, strikes for a few days, and government control, in the absence of a showing that it was not reasonably possible to have produced the minimum requirements within the year.

3. Mines and Minerals—Market Condition Held Not to Excuse Lessee from Payment of Minimum Royalties.—Under a mining lease, providing that, in case of car shortage, or in case government should take charge and control of the management of the mine, or in case of fire, riot, "or any other unavoidable condition" making it impossible to mine same except at a loss, minimum royalties should not apply, held, that market conditions did not excuse lessee from payment of minimum royalties; the rule of the ejusdem generis applying.

FRENCH HAWK, T. E. MOORE, JR., and ROGER T. MOORE for appellant.

H. C. FAULKNER, D. D. FIELDS, D. D. FIELDS & DAY, C. H. BURTON and O'REAR, FOWLER & WALLACE for appellees.

Opinion of the Court by Judge Clarke—Affirming upon both the original and cross appeals.

Appellees, Fairchild, Adams and Lewis, in August, 1917, leased the coal in 850 acres of land to Kingdom Come Coal Company at 10 cents a ton, with specified minimum royalties per annum. The lease was assigned to appellant, which in due time began mining coal therefrom, after expending about $150,000.00 for equipment and in the construction of about two miles of railroad to connect the mine with the tracks of the L. & N. Railroad Company.

On January 22, 1921, appellees instituted this action in equity against appellant, seeking a forfeiture of the lease for asserted waste and breach of contract due to alleged inadequate methods and results of operation and to recover the difference between specified minimum royalties and amounts paid for actual production for the two years from August 22, 1918, to August 22, 1920. Appellant filed answer denying the alleged breach of contract and waste, and plead in bar of recovery of royalties for the first of these two years an arbitration, as provided for in clause 15 of the lease, and a release under clause 4 of the lease from liability for minimum royalties for the second year. By reply, appellees denied the averments of the answer.

A great volume, or rather three large volumes, of evidence was taken, and, upon submission, the chancellor denied a forfeiture of the lease, sustained the arbitration award as a bar to the first year's royalties sued for, and gave judgment against defendant in the sum of $2,615.93, the agreed difference between the specified minimum royalties and the amount paid at ten cents per ton for the second year.

Appellant has appealed from the latter part of the judgment, and appellees have cross-appealed from the remainder thereof. As the cross-appeal may be disposed of briefly, it will be considered first.

The contract contains no provision for a forfeiture, and the alleged grounds therefor, assuming their legality, are not established by the proof. There is, however, much proof in support of these alleged grounds, but it is denied by the witnesses for appellant, who, though not quite so numerous as those for appellees, are apparently better qualified to testify as to the character and efficiency of appellant's mining operations, alleged to be de-

ficient and wasteful. Indeed, the evidence is such that we might concede, though we do not, appellees' contention upon every question of law involved, and still be of the opinion that the chancellor did not err in denying a forfeiture. Hence its denial will not be disturbed, and the questions of law relative thereto need not be discussed.

There is no evidence of fraud in the arbitration proceedings and award, in which appellees' chosen arbitrator and attorney in this action concurred—if indeed it is adequately pleaded—but it is urged that such proceedings and award are void because the provision in the contract therefor is against public policy, and void. To be sure, no case or other authority sustaining the position is cited, but a few cases are cited in support thereof holding that it is against public policy to oust the jurisdiction of courts by coercing observance of an agreement to arbitrate. This however is not our proposition at all. Appellees, themselves, instituted the arbitration proceedings, in accordance with the terms of their contract, accepted and performed the unanimous award of the arbitrators, as did appellant, and it certainly needs neither argument nor authority to prove it is not against public policy to let the matter rest there, as the chancellor rightly adjudged it should.

Coming now to the direct appeal which questions the judgment against appellant for specified minimum royalties for the year ending August 22, 1920, the basis of the claimed exemption therefrom is the 4th clause, which reads:

"Fourth: It is further agreed that in case of car shortage making it impossible for the lessee to secure cars for the shipment of said coal so mined or in case the government should take charge and control of the management of all coal mines, or in case of fire, riot or any other unavoidable condition making it impossible to mine same except at a loss, then in that event said minimum royalties shall not apply."

Appellant insists that the proof shows (a) a car shortage, (b) governmental control of coal mines, and (c) labor conditions making it impossible to mine coal except at a loss; and that because of any one and all of these proven facts, it was, by the above clause, excused from payment of specified minimum royalties.

While governmental control of appellant's mine during the year, and strikes for a few days, are shown, there is no proof that either of these things prevented appellant from operating the mine at a profit and producing sufficient coal to more than pay the minimum royalty at the normal royalty charge of 10 cents per ton. Indeed appellant's own proof is that at this rate it could and would have operated the mine and paid the minimum royalty in 250 working days except for the shortage of cars. Hence it is clear the exemption if sustained must be allowed for this reason alone. It is patent, the phrase ''or any other unavoidable condition making it impossible to mine except at a loss,'' refers to like conditions as those enumerated, or, in other words, that the rule *ejusdem generis* applies.

So construed, the exempting conditions are: car shortage, governmental interference, fire, riot and other like conditions which so interfere with the *operation of the mine* as to make it impossible to mine coal except at a loss. And this clause, when so construed, and considered in the light of minimum royalty requirements, just as clearly excludes even the enumerated and like conditions which do not render profitable operation ''impossible;'' that is, operation with the maximum effort reasonably possible.

It is therefore patent, proof simply of a car shortage for about one-half of the year did not exempt appellant from payment of minimum royalties, but that to accomplish this result it must have proven that it was not reasonably possible for it to have produced the minimum requirements within the year because of the car shortage that existed for part of the time. This it failed to do.

It only proved a car shortage for part of the year; that except therefor, and, operating the mine with such force and methods as it had adopted, it would have produced enough coal at normal royalty charges to have paid minimum royalties, and that increasing its mine capacity by the installation of machinery and a power plant at that time, as contemplated, would not have been advisable under existing conditions. But it did not prove that earlier installation of such machinery, etc., was not reasonably possible or would not have enabled it profitably to have produced sufficient coal to have paid the minimum royalty at normal charges, notwithstanding the car shortage.

We are therefore convinced the trial court did not err in adjudging minimum royalties for the year ending August 22, 1920.

Hence the judgment is affirmed on both the original and cross appeals.